1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KRYSTAFER B.,

                    Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

Case No. 3:23-cv-05050-TLF

ORDER AFFIRMING
DEFENDANT'S DECISION TO
DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 3. Plaintiff challenges the Administrative Law Judge's ("ALJ") decision finding that plaintiff was not disabled. Dkt. 6, Complaint.

For the reasons discussed below, the Court has determined that the ALJ did not commit harmful error in assessing the medical opinions, plaintiff's testimony, or the lay witness statements, and the RFC determination was not erroneous.

Plaintiff filed her applications for SSI and DIB on January 12, 2017. AR 342–58, 1484. She asserted November 1, 2014, as the date of disability onset. AR 1484. Her

1

date last insured, for the purposes of her eligibility for DIB, was December 31, 2019. AR 1485.[1]

After her applications were denied (AR 203–30) initially and upon reconsideration (AR 231–58), a hearing was held before ALJ Gerard Hill on July 2018 (AR 149–97).

ALJ Hill issued a decision finding plaintiff not disabled in November 2018 (AR 116–39). The Appeals Council denied review (AR 1–7); plaintiff appealed (AR 1602–05), and this Court reversed and remanded for further administrative proceedings in April 2021 (AR 1676–97). The Appeals Council vacated ALJ Hill's decision, consolidated plaintiff's applications with new applications she filed for SSI and DIB on January 3, 2020, and remanded for a new hearing. AR 1700.

The second hearing was conducted by ALJ Malcolm Ross ("the ALJ") on April 28, 2022. AR 1529–70. On September 21, 2022, the ALJ issued a decision finding Plaintiff not disabled. AR 1481–1528. The ALJ found plaintiff had the following severe impairments: fibromyalgia, right hip impingement, obesity, depression, anxiety, personality disorder, post-traumatic stress disorder (PTSD), attention deficit hyperactivity disorder (ADHD), and cannabis use. AR 1489.

The ALJ posed hypothetical questions to the Vocational Expert (VE). AR 1558–70. The ALJ found plaintiff had the Residual Functional Capacity (RFC) to perform a restricted range of light work, with the following limitations:

> She can frequently balance, stoop, kneel, crouch, and climb ramps or stairs. She can occasionally crawl and climb ladders, ropes, or scaffolds. She can have frequent exposure to extreme cold, extreme heat, vibrations, and hazards such as unprotected heights and dangerous machinery. She can have frequent

---

[1] This DLI was calculated based on "updated earnings records" submitted to ALJ Ross (AR 1485), and, for that reason, is later than the DLI used in the previous decision on plaintiff's applications reviewed by this Court (*see* AR 1485).

exposure to concentrated fumes, odors, dusts, gases and poor ventilation. She can understand, remember, and carry out simple work. She can perform work that does not require conveyor belt-paced production requirements or hourly quotas. She can perform work in approximately two-hour segments separated by work breaks. She can have only occasional, superficial interaction with the public; She can perform work that does not require tandem or teamwork with co-workers. She can have occasional, simple, and routine workplace changes.
AR 1493.

The ALJ found that given these restrictions, plaintiff could not perform any of her past relevant work but could work, instead, as a cleaner, housekeeping; routing clerk; or labeler. AR 1515–16.

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

1

DISCUSSION

2   I. Plaintiff's Subjective Testimony

3          Plaintiff argues the ALJ improperly assessed her testimony about the extent of

4   her symptoms and limitations. Dkt. 13 at 16–17.[2]

5          Plaintiff testified at the 2018 hearing that she experienced periodic pain

6   throughout her body and frequent numbness and tingling, resulting from her

7   fibromyalgia. AR 174. She testified she was only able to stand for 15 to 20 minutes

8   before needing to rest. AR 166. At the 2022 hearing, she testified that her physical pain

9   prevents her from leaving bed most mornings. AR 1550-51. She testified that she must

10  stand after sitting for a prolonged period but cannot stand for more than three to ten

11  minutes at a time. AR 1556.

12         At the 2018 hearing, she testified that she was periodically fatigued, had poor

13  energy, was unable to care for herself, and had lost interest in engaging in activities. AR

14  176. At the 2022 hearing, she also alleged trouble focusing due to her ADHD. AR 1555.

15  She testified at both hearings that she has a history of poor interpersonal skills and

16

17

18  [2] Plaintiff argues in her opening brief that "this Court previously held" that "the ALJ did not state
    any convincing reason for rejecting [plaintiff's] statements." Dkt. 13 at 5. "The law of the case
19  doctrine generally prohibits a court from considering an issue that has already been decided by
    that same court or a higher court in the same case." *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir.
20  2016). This Court found in its 2021 decision that ALJ Hill's assessment of plaintiff's testimony
    was inadequate (AR 1682–87) and instructed that on remand, *inter alia*, the ALJ must take new
21  testimony and reassess plaintiff's subjective testimony (AR 1697). The ALJ here gave a different
    explanation than ALJ Hill had given for rejecting plaintiff's testimony. *Compare* AR 129 *with* AR
22  1504–09. The issue of whether that particular explanation was adequate is not an issue that this
    Court previously decided and thus not barred by the law of the case doctrine. Moreover, the law
23  of the case doctrine is not applied where there is new, probative evidence assessed. *See Stacy*,
    825 F.3d at 567. Such is the case here—the ALJ considered new testimony (AR 1537–60),
24  additional earnings records (*see* AR 1485), and new medical evidence (AR 1949–3099) in
    finding plaintiff's allegations not credible (*see* AR 1504–09).

25

emotional outbursts, high levels of anxiety, panic attacks, and diminished memory and concentration. AR 168, 176, 177, 178, 181, 182, 1545, 1549, 1555, 1557.

In assessing plaintiff's credibility, the ALJ must determine whether plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of their symptoms for specific, clear, and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

The ALJ found that plaintiff's impairments "are less debilitating than the claimant has alleged" because of "the combination" of "inconsistent statements," "exaggerated symptoms," and a "lack of objective clinical findings." AR 1494. The ALJ gave several reasons in support of this finding.

A.  Medical evidence

The ALJ discounted plaintiff's testimony because medical evidence showed that both her physical and mental symptoms were controlled effectively with treatment and otherwise contradicted the extent of her alleged limitations. AR 1504. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). But an ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

1

### 1.  Mental Symptoms

The ALJ discounted plaintiff's testimony because "the medical evidence reveal[ed] that her mental health conditions are otherwise stable and managed effectively with medication compliance and therapy." AR 1504. The ALJ noted that, "in line with this medical evidence, [plaintiff] regularly demonstrated a normal mood and affect," demonstrating the effectiveness of plaintiff's treatment regimen. *Id.*

"Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Evidence of such effective treatment can be a clear and convincing reason for discounting plaintiff's subjective testimony. *See Kitchens v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023).

Substantial evidence supports the ALJ's finding that plaintiff's mental impairments were controlled effectively with medication. The record reflects that plaintiff, in the three to four years following the date of onset, complained her medications were ineffective. *See e.g.*, AR 597, 825. However, treatment notes indicated her symptoms were stabilized after taking Methylfolate in 2019. *See* AR 2275 (after taking Methylfolate, "my anxiety is reduced . . . Coasting at a manageable level of depression."); 2095 (folate "significantly helped her depression," "she noticed marke[d] improvement"); 2040 ("Has been doing well, generally. Has been taking the L-Methylfolate. . . . now has been seeing improved calming, better sleep. . . . Endorsed stable mood, denies intrusive thought.").

In 2018 and 2019, she began using cognitive behavioral therapy-informed techniques for managing her symptoms. Treatment notes indicated that she increased

her use of skills learned in group therapy (AR 1188, 1223, 1241, 1255–56), had success in managing her interactions with others using those techniques (AR 1272), and that it helped to alleviate her symptoms, *see* AR 2617–18 (CBT and meditation "help[ed] her alleviate symptoms"), 2624 (same), 2040 (noting that therapy was beneficial).

Treatment notes from 2020 through 2022 indicate plaintiff's symptoms were effectively stabilized, often citing medications as the underlying cause. *See e.g.*, AR 2054 ("Medications are stable. … Endorsed stable mood, denies intrusive thoughts," no side effects reported). 2606 ("meds are working when she remembers to take them"); 2431 ("Back on my meds, so my brain is back on track."); 2577 ("medications were helpful when she was consistent with treatment"); 2702 ("claimant acknowledged that she was stable on her medications"); 2662–63 ("describes their mood as activated and stable," "reports their anxiety to be low, ongoing and nonimpairing," "patient endorsed taking medication as described"); AR 2702 ("describes their mood as good and stable"). During this time period, providers also described her symptoms as stabilized in the context of discussing her use of cognitive behavioral therapy. *See* AR 2643–44, 2695, 2712, 2717.

Many of the treatment notes suggesting plaintiff's symptoms were not effectively controlled during the period from 2020 through 2022 were written at times when plaintiff was not taking her medications. *See e.g.*, AR 1110, 2476–79. One treatment note from this period reflected negative symptoms but still indicated that she was taking her medications. *See* AR 2608–09.

In sum, substantial evidence supported the ALJ's determination that plaintiff's mental impairments were effectively controlled with treatment.

2.  Physical Symptoms

The ALJ discounted plaintiff's testimony about her physical symptoms because "the medical evidence reveal[ed] that [her] chronic pain is managed effectively with minimal, conservative treatment, which primarily consists of gabapentin, physical therapy, and marijuana." AR 1504. The evidence cited by the ALJ confirms that plaintiff used gabapentin (AR 2846), but does not indicate it was effective. Plaintiff testified that taking gabapentin made her "feel intoxicated," prohibited driving, and made her "uncomfortable leaving [her] house or interacting with people." AR 181. The ALJ failed to address these side effects, as he was required to do. *See Trevizo v. Berryhill*, 871 F.3d 664, 679–80 (9th Cir. 2017).

With respect to plaintiff's physical therapy, the record reflects that plaintiff reported temporary relief from symptoms as a result of this treatment (AR 653, 2287, 2321) and that, although treatment notes indicated her potential for rehabilitation from physical therapy was positive (AR 658, 2329), after several months of physical therapy, she was still having pain while standing and walking (AR 2305, 2309, 2311, 2334).

With respect to her use of marijuana, most treatment notes reflect that marijuana assisted plaintiff with sleep and with preventing nightmares (*see* AR 531, 560, 2016, 3096) but only one treatment note reported that she also used it for pain management (AR 2024) and that single note did not describe it as being effective at mitigating her symptoms of pain.

Substantial evidence therefore did not support the ALJ's determination that plaintiff's *physical* symptoms were managed with treatment.

The ALJ also found that plaintiff's physical allegations were inconsistent with unremarkable imaging studies done on plaintiff's hip, shoulder, and spine; evidence that plaintiff ambulated with normal gait; treatment notes indicating plaintiff had a full range of motion, strength, sensation, and reflexes; and negative straight leg raise tests. AR 1504 (citing AR 544, 553–54, 604, 679, 691, 784, 947, 1977, 1979, 2097, 2169, 2772).

This evidence is not inconsistent with plaintiff's testimony of severe, chronic pain caused by her fibromyalgia.[3] "[T]hose suffering from [fibromyalgia] have muscle strength, sensory functions, and reflexes that are normal." *Revels v. Berryhill,* 874 F.3d 648, 655 (9th Cir. 2017) (quotation omitted). Examinations finding no limitations in a claimant's range of motion and negative straight leg tests are not inconsistent with chronic pain from fibromyalgia. *Id.* at 660, 663. Nor are unremarkable imagining studies, as persons with fibromyalgia typically have normal musculoskeletal testing results. *See id.* at 656. The ALJ therefore erred in finding plaintiff's physical symptoms testimony inconsistent with the medical evidence.

B.  Failure to Take Medications

The ALJ also discounted plaintiff's subjective testimony, in part, because of evidence that she "failed to follow-through with treatment recommendations." AR 1508. An ALJ may consider an "unexplained or inadequately explained failure to seek

---

[3] Defendant argues that plaintiff "waived" any argument with respect to her fibromyalgia because she did "not raise an argument regarding the ALJ's assessment of this impairment." Dkt. 20 at 5–6 n.3. However, plaintiff argued in her opening brief that the ALJ erred in finding that medical evidence related to her physical symptoms were inconsistent with her allegations and with various medical opinions. *See* Dkt. 13 at 3–4, 17. Given that her physical symptoms were described as primarily arising from fibromyalgia, this argument necessarily required the Court to assess whether the ALJ properly evaluated the medical evidence in light of plaintiff's impairment of fibromyalgia.

treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

At several times during the relevant period, plaintiff stopped taking all of her medications for periods of one or more months, and additional treatment records reflect that she had difficulties with maintaining consistency in taking her medications. *See* AR 1237 (December 2017: "She stopped taking all of her medications" at time of year where she knew "anxiety is worse."), 1256, 1279, 1287–88 (February 2018: "She stopped all of her medications in the past 6 months."), 2046 (March 2019: she "took 6 [week] break" from medications), 2529 (June 2020: "struggling with medications being consistent"); *see also* AR 577 ("[plaintiff's then-therapist] notes that [plaintiff] stops taking her psychiatric medications very quickly if she doesn't get immediate results."). The ALJ found plaintiff's failure to take her other medications was "mostly not due to her reported limited finances" (AR 1508) and plaintiff does not challenge this assessment. The ALJ did not err in relying on plaintiff's unexplained deviations from her treatment programs as a reason for discounting her credibility.[4]

C.  Prior Work

The ALJ rejected plaintiff's testimony, in part, because plaintiff's work record during the relevant period "show[ed] [plaintiff] is capable of working despite her physical and mental impairments." AR 1505. The ALJ may consider a claimant's work record in

---

[4] The ALJ also pointed to evidence that plaintiff used cannabis at least several times a week (AR 531, 560–61, 608, 631, 655, 2024, 3096, 2016) despite a provider's contrary recommendation (AR 615, 620). But the ALJ found cannabis provided effective relief for plaintiff's physical symptoms (AR 1504) and plaintiff indicated it mitigated her nightmares (AR 560–61, 2016). This deviation from a treatment recommendation was not unexplained, and, without further explanation from the ALJ as to why he found these explanations inadequate, do not support the ALJ's decision.

assessing her testimony. *See* 20 C.F.R. § 404.1529(c)(3). But the ALJ may only

discount the claimant's testimony based on her prior work record where it is inconsistent

with the alleged severity of her symptoms. *See Lingenfelter v. Astrue*, 504 F.3d 1028,

1038–40 (9th Cir. 2007).

Here, the ALJ identified evidence that plaintiff had performed work from her

alleged onset date through February 2022 (AR 1505–06), "note[d] that [plaintiff] often

left jobs for reasons unrelated to her impairments" (AR 1508), and found that her work

record was inconsistent with her allegations and "weaken[ed] the overall reliability of

[her] statements" (AR 1506). The ALJ specifically pointed to the following work

experiences (AR 1505):

- She worked as a karaoke host from July 2011 through August 2015 (nine months after the alleged onset date). AR 657, 1505. She described the position as "pretty labor intensive" (AR 1842) but worked two shifts of five-and-a-half to six hours each week (AR 657) and left for reasons unrelated to her symptoms (AR 168, 530, 657).

- She worked as a cashier at a convenience store from July to November 2015 (AR 408, 577, 591, 614) and left for reasons unrelated to her symptoms.[5]

- She worked at a fast-food restaurant from August to November of 2019 (AR 2015–16) where she stood for the duration of four-to-six hour shifts excluding breaks (AR 1553) and left for a variety of reasons, only one of which was related to her symptoms (*see* AR 1538).

- She worked as a caregiver for 17 hours per week in 2018. *See* AR 1276–77, 1819, 2167, 2184.

---

[5] A treatment note indicates she left the job because a state agency told her that her income was too high to maintain housing benefits. AR 738. The ALJ found, and plaintiff does not dispute, that this was the reason for her leaving. AR 1487, 1505. She did bring a workers compensation claim alleging injury in this position after she worked "multiple shifts [without] proper breaks" that involved "over-reaching bulky [and] heavy objects, primarily fluids over 50 lbs." AR 1467. However, her workers compensation claim was denied, and the doctor assessing the claim found there was less than a 50% chance that it was caused by an occupational injury and that the injury could heal within several days. AR 1467. The ALJ gave great weight to this statement (AR 1510) and plaintiff does not challenge its validity (*see generally* Dkt. 13).

- She worked as a nanny from March 2016 through February 2022 (*see* AR 1547, 2070, 2098, 2335, 2339, 2476, 2483, 2542, 2577, 2632, 2864, 2963), working for a single family for all but three months of the time period from March 2020 through February 2022 (AR 1547). For at least six months, she worked five days a week for seven hours a day (AR 1547, 1557). She left the position because of an injury which is not an impairment at issue here (AR 1547).

- She worked as a delivery driver and later as a rideshare driver for 10 to 15 hours per week from Summer 2017 through February 2020 (*see* AR 1046, 1537, 1809–10, 1881, 2015–16) and left at the beginning of the coronavirus pandemic due to concerns about maskless riders (AR 1537).

The VE classified some of plaintiff's past employment: her nanny, caregiver, and rideshare positions required a medium exertional level of work and all three required a specific vocational preparation level of 3. AR 1563–64.

The ALJ reasonably found at least some of plaintiff's work record inconsistent with her allegations of work-prohibitive physical pain and mental health symptoms. With respect to her mental health limitations, plaintiff's work experience showed she was at least capable of maintaining sufficient focus to engage in the simple, routine work that the RFC limited her to. This is particularly so, as she engaged in work which required a reasoning level beyond simple, routine, or repetitive work. *See Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). Given that many of her jobs likely required interactions with supervisors, teammates, and (as a rideshare driver) with the public, her experience showed she can interact with those groups at least on the limited basis reflected in the RFC—having "occasional, superficial" public interaction and no teamwork with co-workers (AR 1493). Similarly, that she was able to continue to perform some of these positions on a regular schedule was inconsistent with her allegations of work-prohibiting motivational issues.

1    The ALJ similarly found at least some of plaintiff's work experiences were

2  inconsistent with her alleged physical symptoms. "Even if the claimant experiences

3  some difficulty or pain, her daily activities 'may be grounds for discrediting the claimant's

4  testimony to the extent that they contradict claims of a totally debilitating impairment.'"

5  *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (citation omitted). The same is true

6  of work activities. Contrary to her testimony that she was unable to sit for prolonged

7  periods, she only made complaints about pain from sitting while working as a rideshare

8  and delivery driver when she had to perform abnormally long shifts. *See* AR 2323.

9  During her time as a nanny—which involved nearly full-time work at a higher exertional

10  level than the RFC—she complained only once of pain, stemming from picking up a

11  toddler (AR 2335, 2339); while this is consistent with her allegations of being unable to

12  pick up heavy objects, the RFC accounts for such limitations, *see* 20 C.F.R. §

13  416.967(b).

14    Her work as a cashier, at a fast-food restaurant, and as a karaoke host, were

15  positions that required frequent physical activity such as standing for the duration of her

16  shifts (AR 745, 1553, 1842); this is inconsistent with her allegations of being unable to

17  stand for more than several minutes at a time. "It is not the court's role to 'second-

18  guess' an ALJ's reasonable interpretation of a claimant's testimony." *Smartt*, 54 F.4th at

19  500. The ALJ did not err in finding that plaintiff's work experience was inconsistent with

20  her allegations.[6]

21

22  [6] This case is distinct from the situation in *Lingenfelter*, where the Ninth Circuit found an ALJ
   erred in considering a claimant's past work attempts where the experience was only nine weeks

23  long, the claimant was fired because he was unable to perform his job due to his impairments,
   the work experience occurred outside the relevant time period, and the claimant had engaged in

24  work due to economic necessity. 504 F.3d at 1038–40. The Ninth Circuit contrasted the nine-

25
                                                13

1

2      D.  Activities of Daily Living

3          The ALJ discounted plaintiff's testimony because her activities of daily living

4      "demonstrate[d] a level of functioning in excess of her claimed limitations." AR 1507. An

5      ALJ may discount a claimant's testimony based on daily activities that either contradict

6      her testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495

7      F.3d 625, 639 (9th Cir. 2007).

8          The ALJ pointed to the following specific activities that plaintiff engaged in: (1)

9      cooking, performing chores, driving, running errands, and managing finances; (2) taking

10     care of her significant other's children; (3) exercising through swimming and Zumba

11     classes; (4) hobbies such as reading, writing, playing games, and making jewelry; (5)

12     her work as an activist; and (6) travel and camping. AR 1507–08. The ALJ found that

13     these activities undermined plaintiff's testimony of having limited physical activity

14     tolerance and poor motivation and interpersonal skills. *Id.*

15         There is not substantial evidence in the record to establish that plaintiff's

16     activities undermined her physical symptom testimony. The record indicates plaintiff

17     required "frequent breaks" in performing her household chores (AR 2016), which is

18     consistent with her testimony, and the record does not discuss the extent of physical

19     activities required for the other activities identified by the ALJ. Similarly, while one

20     treatment note indicates she took a Zumba class and several endorse her swimming as

---

week length of the experience with the nine month "trial work period" which individuals receiving benefits can engage in and which Commissioner does not consider "as evidence that the individual is no longer disabled." *Id.* (citing 20 C.F.R. § 404.1592). Here, plaintiff worked for significantly more than nine months. The record also reflects that plaintiff often did not leave her position due to her impairments, all the cited work experiences occurred during the relevant time period, and at least some of her work experiences were not engaged in due to economic necessity, *see e.g.*, AR 1538 (plaintiff testifying, with respect to fast-food position, that she "was only really working there because [her] friend needed rides to work").

a means to engage in exercise, there is no evidence as to how frequently she engaged

in these activities nor did the ALJ explain why such activities were inconsistent with

plaintiff's testimony about her limitations in sitting and standing. *See Vertigan v. Halter*,

260 F.3d 1044, 1050 (9th Cir. 2001) (with respect to exercise activities like walking and

swimming, "a patient may do these activities despite pain for therapeutic reasons, but

that does not mean she could concentrate on work despite her pain or could engage in

similar activities for a longer period given the pain involved").

However, the ALJ reasonably found that at least some of plaintiff's activities

undermined her testimony of having poor motivation and interpersonal skills. The record

reflected plaintiff attempted to do her chores and housework daily (AR 1927) and that

plaintiff's activist work required six or more hours per day of effort "in a very stressful

capacity" (AR 2577). These activities are inconsistent with her allegations of poor

motivation. Her activist work also involved being around others for a significant amount

of that time (AR 2541, 2577, 2657, 2749), contrary to her alleged interpersonal

difficulties. The ALJ thus reasonably determined that some of plaintiff's activities

undermined her mental health symptoms.

E.  Secondary Gain

The ALJ rejected plaintiff's testimony because "[t]he record shows [she] exhibited

questionable behaviors during evaluations and treatment visits that raised significant

concerns for secondary gain." AR 1506. In particular, the ALJ pointed to evidence that

plaintiff asked providers to complete disability paperwork so that her student loans

would be forgiven. AR 1506 (citing AR 573, 776, 780–81, 925, 1005). This alone is not a

valid reason to reject plaintiff's testimony. *See Reinertson v. Barnhart*, 127 Fed. App'x

285, 288 (9th Cir. 2005) ("[T]here is no support in the law of this circuit for the proposition that an ALJ may deem a claimant not credible merely because she has a genuine financial need for the benefits that she is seeking. It is difficult to see how any claimant could be found credible under that reasoning.").[7]

However, the ALJ also pointed to evidence that, when asking her providers to complete disability paperwork, on three occasions she represented to those providers that she had been previously found disabled. AR 1506 (citing AR 201–02, 780–81, 925). This demonstrated that some of her statements to providers were less than candid.[8] An ALJ can consider "ordinary techniques of credibility evaluation" – such as a claimant's past insincere statements – in evaluating a plaintiff's credibility. *See Smolen*, 80 F.3d at 1284.

Additionally, the ALJ pointed to evidence suggesting plaintiff pursued disability benefits due to a desire to not be employed. Plaintiff made the following statement to one provider: "I just want the stability of Disability Income. I care more about filling my time with volunteer work." AR 2086. She also left her job as a cashier because her

---

[7] The ALJ also noted (AR 1506) two other instances of purportedly questionable behavior: plaintiff "indirectly . . . threaten[ed] suicide and violent behavior" due to her desire to have her disability paperwork completed (AR 2086) and engaged in sex work and said she would do so "until the federal government recognizes [her] disability" (AR 833–34). Both incidents appear to show only that she had a desire to receive benefits, which is not a sufficient reason to discount her testimony. *See Reinertson*, 127 Fed. App'x at 288. Without further explanation by the ALJ as to how these incidents harm her credibility, these were not sufficient reasons to discount her testimony.

[8] Plaintiff said in January 2017 that she was previously "declared disabled" (AR 573), suggested in February 2017 that she was found "totally and permanently disabled" (AR 780–81), and said in June 2017 she "was found disabled by the state" the previous year (AR 925). Plaintiff's previous application for disability had been dismissed in 2016 (AR 201–02), her workers compensation claim was denied in late January or early February 2017 (AR 1453, 1467–68), and her applications at issue here were denied initially in March 2017 (AR 203–04). Thus, at the very least, the statements were less than candid at the time they were made.

income was purportedly too high to continue to maintain housing benefits. AR 738.

Such evidence of an inclination against employment supports an adverse credibility

finding. *See Thomas v. Barnhart*, 278 F.3 947, 959 (9th Cir. 2002) (finding claimant's

limited "propensity to work throughout lifetime . . . negatively affected her credibility

regarding her inability to work").

In sum, there are several statements the ALJ properly relied on and provided

legally supported reasoning for, in finding plaintiff had engaged in behaviors that show

"concerns for secondary gain." Substantial evidence supported the ALJ's adverse

credibility finding.

F.  Harmless Error

An error that is inconsequential to the non-disability determination is harmless.

*Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An ALJ's

error in discounting subjective testimony may be harmless "where the ALJ provided one

or more invalid reasons for disbelieving a claimant's testimony, but also provided valid

reasons that were supported by the record." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th

Cir. 2012) (citations omitted). In that context, "an error is harmless so long as there

remains substantial evidence supporting the ALJ's decision and the error 'does not

negate the validity of the ALJ's ultimate conclusion.'" *Id.* (citations omitted).

Such is the case here. The ALJ validly discounted plaintiff's testimony about her

mental symptoms based on inconsistency with the medical evidence, her treatment, her

failure to follow through with some treatment programs, inconsistency with her activities

and work experience, and several inconsistent statements supporting an adverse

credibility finding. The ALJ validly discounted plaintiff's testimony about physical

conditions based on the inconsistency with her prior work, but also found that adverse

credibility findings "weaken[ed] the overall reliability of" her allegations. AR 1506–08.

An ALJ can find that a lack of candor with respect to some symptoms "carries

over" to a claimant's testimony about others. *See Thomas*, 278 F.3d at 959. "If

the ALJ's credibility finding is supported by substantial evidence in the record, [the

Court] may not engage in second-guessing." *Id.* The ALJ's decision was supported by

substantial evidence and therefore any error committed with respect to his assessment

of plaintiff's subjective testimony was harmless.[9]

II.  Plaintiff's PCOS, IBS, and Right Shoulder Impingement

Plaintiff argues the ALJ "failed to properly evaluate" her polycystic ovarian

syndrome (PCOS), Irritable Bowel Syndrome (IBS), and her right shoulder

impingement. Dkt. 13 at 10–11. The ALJ found all three impairments to be non-severe

at step two (*see* AR 1489–90) and did not include any limitations related to those

impairments in the RFC (AR 1493–1510).[10] The Court has found that the ALJ

articulated clear and convincing reasons for finding plaintiff's testimony uncredible. The

combination of the ALJ's reasons for finding plaintiff to generally be an inaccurate

historian of her condition, along with the ALJ's reasonable interpretation of the medical

evidence, is sufficient to uphold the ALJ's determination that plaintiff's PCOS, IBS, and

right shoulder impairments did not need to be considered in the RFC.

---

[9] For this reason, the Court need not address the remaining reasons the ALJ gave for discounting plaintiff's testimony, as any error with respect to those reasons would be harmless.

[10] Plaintiff's opening brief also argues the ALJ failed to consider her ADHD, Dkt. 13 at 10, but she concedes in her reply brief that it was considered as a severe impairment, *see* Dkt. 21 at 5 n.3.

Plaintiff testified that her PCOS results in "sharp and stabbing" pains during her periods that often prohibit her from leaving bed. AR 171, 1549–50. She testified at the 2018 hearing that her IBS causes unpredictable bowel movements and requires her to be within two feet of the bathroom. AR 171, 173–74. The ALJ considered both conditions to be non-severe because "the medical evidence show[ed]" they were "benign and controlled well on her treatment regimen." AR 1489–90.

Plaintiff used a variety of medications to manage the pain from her PCOS, including birth control pills and metformin, which records reflect improved her symptoms (AR 582, 634, 891). One treatment note confirms plaintiff had stabbing pains from her PCOS that required her to call out from work (AR 600–01) but a subsequent note indicated the pain was improved by medication (AR 582), and there is little medical evidence in the record involving this condition after this note. Although the ALJ could not reject plaintiff's testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain," *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991), this was a sufficient basis on which to conclude that plaintiff's PCOS did not further limit her when combined with the ALJ's determination that plaintiff's testimony was otherwise not credible.

With respect to plaintiff's IBS, the record reflects that a probiotic supplement was recommended to her (AR 664), that plaintiff had normal stools after it was recommended to her (AR 2095), and that gastrointestinal imagining found no abnormalities in her colon except for polyps which were subsequently removed (AR 874–75, 3081–99). Plaintiff cites several pieces of evidence ostensibly confirming her allegations about her IBS (Dkt. 13 at 10–11 (citing AR 571, 1086, 1093)) but that

evidence merely confirms plaintiff's IBS diagnosis and predates the normal

gastrointestinal imaging evidence. Given evidence showing plaintiff had normal stools

and normal gastrointestinal imaging, the ALJ reasonably determined that plaintiff's IBS

did not need to be considered in the RFC.

With respect to plaintiff's right shoulder impingement, although the ALJ found the

impairment non-severe at step two (AR 1490), he also generally considered her pain

testimony in formulating the RFC (*see* 1504–09, 1512). Having determined the ALJ met

his properly discounted plaintiff's subjective testimony, the ALJ did not err in not

including limitations related to this impairment in the RFC, and any error committed with

respect to the ALJ's step two determination was harmless. *See Buck v. Berryhill*, 869

F.3d 1040, 1049 (9th Cir. 2017) (where impairments are considered at steps four and

five, the RFC "should be exactly the same regardless of" the step two findings).

The ALJ therefore did not err in omitting limitations from plaintiff's PCOS, IBS,

and right shoulder impingement impairments in formulating the RFC.

III.  Medical Opinions

Plaintiff argues the ALJ erred in evaluating the medical opinions of Tasmyn

Bowes, Psy.D.; William Wilkinson, Ed.D.; Brandy Thomas, M.D.; Renee Eisenhauer,

Ph.D.; Terilee Wingate, Ph.D.; Dana Harmon, Ph.D.; Nancy Armstrong, ARNP; and four

state agency non-examining physicians. Dkt. 13 at 3–9, 15–17.[11]

---

[11] Plaintiff summarizes other parts of the medical evidence. Dkt. 13 at 11–15. But plaintiff makes no substantive argument about the ALJ's evaluation of any opinions or impairments other than those discussed in this opinion. *See id. See Carmickle*, 533 F.3d at 1161 n.2 (quoting *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003)).

Plaintiff filed her applications prior to March 27, 2017, therefore under the applicable regulations, an ALJ must provide "clear and convincing" reasons to reject the uncontradicted opinions of an examining doctor, and "specific and legitimate" reasons to reject the contradicted opinions of an examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

An examining physician's opinion is "entitled to greater weight than the opinion of a non-examining physician." *Lester*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester,* 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (citations omitted). "In order to discount the opinion of an examining physician in favor of the opinion of a non-examining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (citing *Lester,* 81 F.3d at 831).

A.  Drs. Wilkinson and Wingate

State agency examiner Dr. Wilkinson submitted an opinion in November 2016 based on an evaluation of plaintiff. AR 559–63. State agency examiner Dr. Wingate submitted opinions in November 2018 (AR 2023–27) and February 2020 (AR 2015–19)

based on prior psychological evaluations, social work notes, and her own evaluations of plaintiff.[12]

All three opinions opined plaintiff had marked limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. AR 562, 2017, 2025. Dr. Wingate opined plaintiff had a marked limitation in her ability to maintain appropriate behavior and communicate effectively in a work setting, while Dr. Wilkinson opined plaintiff had moderate limitations in those abilities. *Id.* All three opinions found plaintiff had moderate limitations in her abilities to understand, remember, and persist in tasks by following detailed instructions; learn new tasks; and perform routine tasks without special supervision. *Id.* Dr. Wingate also opined plaintiff had a moderate limitation in her ability to ask simple questions or request assistance. AR 562.

The ALJ gave all three opinions "little weight." AR 1510, 1513. The ALJ rejected all three opinions because they were inconsistent with medical evidence showing plaintiff's controlled symptoms resulting from positive response to treatment from

---

[12] Dr. Wingate also submitted an opinion in July 2013. AR 1949–53. She opined plaintiff had several moderate limitations. AR 1951–52. She indicated these moderate limitations would last six to twelve months—that is, they would not last beyond July 2014, four months before the alleged onset date. AR 1952. The ALJ gave this opinion little weight because it "addressed [plaintiff's] functioning well before the start of the relevant period." AR 1515. "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008). Plaintiff argues the opinion "provides longitudinal support for [plaintiff's] disability claims." Dkt. 13 at 6. But the opinion specifically indicates that all opined limitations would expire prior to the alleged onset date. *See* AR 1952. It therefore did not purport to address the state of plaintiff's limitations after the onset date. The ALJ did not err in giving the opinion little weight.

medication and therapy. AR 1510, 1513. An inconsistency with medical evidence is a sufficient reason to reject the opinion of an examining source. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008). As discussed, the ALJ reasonably concluded that plaintiff's mental symptoms were able to be controlled by a combination of medication and therapy based on acknowledgements by her providers and herself that these treatments were effective (AR 2095, 2275, 2431, 2606, 2617–18, 2662–63, 2643–44, 2695, 2702, 2712, 2717) and evidence that, for the most part, described her mental symptoms as being stable and non-impairing while using medications and CBT techniques (AR 2054, 2431, 2643–44, 2695, 2712, 2717).

The ALJ also rejected all three opinions because they were inconsistent with her activities and work experience. AR 1510, 1513. "A conflict between [an opinion] and a claimant's activity level is a specific and legitimate reason for rejecting the opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). As discussed, the ALJ reasonably found that plaintiff's work experience and activities were inconsistent with further limitations from her psychological symptoms. In particular, the ALJ reasonably found that plaintiff's extensive work experience was inconsistent with further limitations in her abilities to maintain attendance and be punctual, complete workdays and workweeks without interruptions from psychologically based symptoms and maintain appropriate behavior in a work setting. The ALJ further reasonably found that plaintiff's experience as a nanny, caregiver, and rideshare driver was inconsistent with opined limitations in her ability to learn new tasks and perform routine tasks without supervision, given that this work experience required a level of vocational preparation beyond simple, routine, or repetitive work. *See Buck*, 869 F.3d at 1051.

The ALJ did not err in giving Drs. Wingate and Wilkinson's opinions little weight.

B.  Dr. Harmon

In February 2020, Dr. Harmon submitted an opinion based on her review of Drs. Wingate and Wilkinson's reports (AR 2968–72) which the ALJ gave "partial weight" to (AR 1514). With respect to Dr. Harmon's statement, plaintiff argues only that the ALJ erred by giving the statement partial weight but "failing to acknowledge [Dr. Harmon's] comment asking, 'Why has SSA repeatedly concluded that [plaintiff] is not significantly disabled?" Dkt. 13 at 8 (quoting AR 2968). The ALJ did not err by failing to address this question. To the extent Dr. Harmon's question was intended to express an opinion that plaintiff should be found disabled, the question was an opinion on an issue "reserved to the Commissioner" deserving no weight. 20 C.F.R. § 404.1527(d)(1), (d)(3).

C.  ARNP Armstrong

Nurse Armstrong submitted an opinion in December 2018 based on her physical evaluation of plaintiff. AR 1958–60. She opined plaintiff was unable to meet the demands of sedentary work. AR 1959. Under the regulations applicable to this case, a nurse practitioner is an "other source," *see* 20 C.F.R. §§ 404.1513(a), (d), 416.913(a), (d), and "an ALJ may discount the opinion of an 'other source,' such as a nurse practitioner, if [he] provides 'reasons germane to each witness for doing so," *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)). The ALJ met this burden here. The ALJ explained that the extent of plaintiff's limitations reflected by Nurse Armstrong was inconsistent with her activities and work experience. As discussed, plaintiff's work activity, at the very least, was

inconsistent with allegations of completely debilitating physical pain. The ALJ did not err in assessing Nurse Armstrong's opinion.

D.  Dr. Bowes

State agency examining psychologist Dr. Bowes evaluated plaintiff in December 2015. AR 528–35. She opined plaintiff only had several moderate limitations. AR 533. The ALJ gave "great weight" to Dr. Bowes' opinion. AR 1509.

Plaintiff argues the ALJ erred because the RFC "does not fully account for all of the limitations described by Dr. Bowes." Dkt. 13 at 3. However, the ALJ noted that Dr. Bowes "assessed only temporary restrictions" but that "her opinion is otherwise consistent with the overall medical evidence of record." *Id.* The ALJ therefore did not accept these limitations and was not required to incorporate these restrictions in the RFC. *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989); SSR 96-8p. "Even when an agency 'explains its decision with less than ideal clarity,' [the Court] must uphold it 'if the agency's path may reasonably be discerned.'" *Molina*, 674 F.3d at 1121 (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). The Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755. The ALJ provided a reasoned decision rejecting similar limitations opined by Drs. Wingate and Wilkinson, explained why the determinations of state agency psychologists who opined no such limitations were supported by the record, and adequately explained why the evidence did not justify a more limited RFC. The ALJ therefore did not err in his assessment of Dr. Bowes' opinion.

E.  Dr. Eisenhauer

1    State agency consultant Dr. Eisenhauer opined plaintiff had several moderate

2  limitations, but that these limitations would not "prevent" plaintiff from "engag[ing] in

3  work activity within an average schedule and work week the majority of the time," and

4  that plaintiff would "be able to adapt adequately to change the majority of the time." AR

5  214–15. The ALJ gave "great weight" to the opinion. AR 1511.

6    Plaintiff argues the ALJ erred because "the ALJ never acknowledged that Dr.

7  Eisenhauer included the language 'the majority of the time' in her opinion, nor did the

8  ALJ include this language in [the RFC]." Dkt. 13 at 6. Plaintiff made the same argument

9  with respect to the same opinion in her previous appeal before this Court. *See* AR

10  1691–92. This Court found that the phrase "the majority of the time" could reasonably

11  be interpreted as meaning all or nearly all the time. AR 1692. Because the Court "must

12  defer to the ALJ's conclusion" if "the evidence before the ALJ is subject to more than

13  one rational interpretation," this Court rejected plaintiff's argument. *Id.* (quoting *Batson*

14  *v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004)).

15    "[T]he law of the case doctrine . . . appl[ies] in the social security context." *Stacy*

16  *v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). It "generally prohibits a court from

17  considering an issue that has already been decided by that same court or a higher court

18  in the same case." *Id.* (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir.

19  2012)). Because plaintiff's argument was already considered and rejected by this Court,

20  and no change has occurred in the facts or law pertinent to the analysis, the Court relies

21  on law of the case doctrine and declines to reconsider it.

22    F.  Dr. Thomas

23

24

25

26

1    Treating physician Dr. Thomas completed a functional assessment of plaintiff's

2    physical limitations in July 2018. AR 1476–79. The ALJ gave the opinion little weight, in

3    part, because it was based on plaintiff's subjective reporting. AR 1512. "A physician's

4    opinion of disability premised to a large extent upon the claimant's own accounts of [her]

5    symptoms and limitations may be disregarded where those complaints have been

6    properly discounted." *Buck*, 869 F.3d at 1049 (9th Cir. 2017) (quoting *Morgan v.*

7    *Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)).

8    Such is the case here. Plaintiff argues the opinion was not based "solely on

9    [plaintiff's] subjective complaints." Dkt. 13 at 5. But Dr. Thomas emphasized throughout

10   the form that the opinion was based on plaintiff's subjective reporting. She disclaimed at

11   the beginning of the form that "much of the requested" information was based on

12   "subjective reporting" and "not objectively able to be tested." AR 1476. She wrote that

13   her assessment of plaintiff's capacities to sit, stand, lift, and carry were "per patient,"

14   "not tested," and based on what plaintiff "state[d]" and "report[ed]." AR 1476. And she

15   indicated her assessment of plaintiff's manipulative functions were "all subjective." AR

16   1478. The form was therefore at least "premised to a large extent upon" plaintiff's

17   subjective reports. Because plaintiff's subjective reports were properly discounted, the

18   ALJ did not err in his assessment of Dr. Thomas's opinion. *Buck*, 869 F.3d at 1049.[13]

19

20   [13] This situation is distinct from the one in *Revels*, where the Ninth Circuit found an ALJ erred in
     discounting a physician's tender-point examinations for a claimant with fibromyalgia, because
21   they were based on subjective complaints. 874 F.3d 648, 663 (9th Cir. 2017). Discounting
     tender-point examinations for that reason is erroneous because "tender-point examinations
22   themselves constitute 'objective medical evidence' of fibromyalgia." *Id.* (quoting SSR 12-2p).
     Here, however, Dr. Thomas's opinion did not suggest it was based on either plaintiff's results
23   from her tender-point examination or on any other objective medical evidence. Rather, the
     opinion repeatedly emphasized that it was based on plaintiff's statements and reports. The ALJ
24   therefore did not discount the opinion by mistakenly conflating the opinion's basis with

25

1

### G.  State Agency Psychologists

2          Four state agency psychologists and physicians opined on plaintiff's conditions,

3   assessing few limitations—Michael Regets, Ph.D. (AR 1616–20); Eugene Kester, M.D.

4   (AR 1653–55); Robert Hander, M.D. (AR 1616–17); and Charles Wolf, M.D. (AR 1668–

5   70). The ALJ gave these opinions "great weight" because they were consistent with

6   medical evidence, including plaintiff's response to treatment, normal mental status exam

7   findings, as well as plaintiff's work activities and activities of daily living. AR 1514–15.

8          Plaintiff argues only that "the opinions of non-examining physicians are generally

9   entitled to less weight than the opinions of treating and examining physicians." *See* Dkt.

10  13 at 15. It is true that "the opinions of nonexamining doctors 'cannot by themselves

11  constitute substantial evidence that justifies the rejection of the opinion of either an

12  examining physician or a treating physician." *Revels*, 874 F.3d at 664 (quoting *Lester*,

13  81 F.3d at 831) (cleaned up). But such opinions may nevertheless "constitute

14  substantial evidence when [they are] consistent with other independent evidence in the

15  record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (citations omitted);

16  *see also Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996). As discussed, the ALJ's

17  decision was consistent with her prior work experience and positive responses to

18  mental health treatments, and therefore the ALJ did not err in relying on these opinions

19  to discount plaintiff's testimony.

20

21

22

23  ---

subjective reporting, as in *Revels*, but, rather, reasonably interpreted the opinion as being
24  entirely based on subjective reporting that cannot be tested.

25

IV.  Lay Witness Statements

Plaintiff's cousin submitted two statements concerning the alleged limitations that plaintiff testified to. *See* AR 436–43, 1925–32. When evaluating opinions from an individual who is within the category of "non-acceptable medical sources," such as a family member, an ALJ may expressly disregard such lay testimony by providing "reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Where an ALJ has provided clear and convincing reasons to discount a claimant's testimony, those reasons are germane reasons for rejecting similar lay witness testimony. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

Such is the case here. The ALJ found that plaintiff's cousin's statements were inconsistent with both the medical evidence, plaintiff's work experience, and plaintiff's activities of daily living. AR 1510–11. Although the ALJ may not reject lay witness testimony solely on the basis of a lack of corroborating medical evidence, *see Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009), but the Court has determined that the ALJ did not err in finding the limitations reflected in plaintiff's cousin's statements to be inconsistent with the medical evidence, inconsistent with plaintiff's activities of daily living, and inconsistent with plaintiff's work experience. The ALJ therefore did not err in assessing plaintiff's cousin's statements. *See Turner*, 613 F.3d at 1224.

V.  RFC Determination

Plaintiff argues the ALJ's RFC determination was "legally erroneous" because it did not include all the limitations described by the medical opinions discussed above, plaintiff's testimony, and plaintiff's cousin's lay witness statement. Dkt. 13 at 18–19.

Because the ALJ did not commit harmful error in assessing the medical opinions, plaintiff's testimony, or the lay witness statements, the RFC determination was not erroneous.

CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ properly determined plaintiff to be not disabled. Therefore, the ALJ's decision is **AFFIRMED**.

Dated this 1st day of March, 2024.

Theresa L. Fricke
United States Magistrate Judge